# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## No. 15-7030

COSTCOMMAND, LLC,
          Plaintiff-Appellant,

     v.

PRS SOFTWARE SOLUTIONS, INC.;
FULL THROTTLE FILMS INC., d/b/a
VIDEO EQUIPMENT RENTALS;
WH ADMINISTRATORS, INC.; and
BRENDAN M. TURNER,
            Defendants-Appellees.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA, CASE NO. 1:14-CV-00457 (ABJ)

## APPELLANT'S OPENING BRIEF

Patrick A. Klingman
KLINGMAN LAW, LLC
196 Trumbull Street   Suite 510
Hartford, CT  06103-2207
(860) 256-6120

Christopher Kip Schwartz
Schwartz & Associates PLLC
1010 Wisconsin Ave., NW  Suite 540
Washington, DC  20007-3603
(202) 342-0413

Counsel for Appellant, CostCommand, LLC

**This case has not yet been scheduled for oral argument.**

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

Counsel for Appellant, CostCommand, LLC, certifies the following:

(A)    <u>Parties and Amici</u>:

    (1)    All parties, intervenors and amici appearing before the District Court:

        Plaintiff, CostCommand, LLC; and

        Defendants, PRS Software Solutions, Inc.; Full Throttle Films Inc., d/b/a Video Equipment Rentals; WH Administrators, Inc; and Brendan M. Turner.

    (2)    All parties, intervenors and amici appearing before this Court:

        Appellant, CostCommand, LLC; and

        Appellees, PRS Software Solutions, Inc.; Full Throttle Films Inc., d/b/a Video Equipment Rentals; [1] WH Administrators, Inc.; and Brendan M. Turner.

    (3)    Rule 26.1 Corporate Disclosure Statement:

        Appellant, CostCommand, LLC, is a limited liability company, whose

sole member, Ronald J. Vance, Jr., resides in Maryland.  It has no parent

---

[1]On or about September 3, 2015, CostCommand, LLC and PRS Software Solutions, Inc., in connection with a related action pending in the United States District Court for the Central District of California, reached an agreement in principle to resolve all disputes between them, including this appeal.  On September 10, 2015, CostCommand and Full Throttle Films Inc., doing business as Video Equipment Rental, likewise reached a resolution.  Consequently, it is anticipated that both PRS Software Solutions, Inc. and Full Throttle Films Inc. will move, on consent, to withdraw from this appeal in the near future.

companies, subsidiaries or affiliates, and no publicly held company holds any interest in it.

(B)     <u>Rulings under Review</u>:

This is an appeal from United States District Judge Amy Berman Jackson's November 13, 2014 Order and supporting Memorandum Opinion dismissing the action below for lack of subject matter jurisdiction, and Judge Berman Jackson's March 11, 2015 Order denying CostCommand's motion for reconsideration of her November 13th Order.  These Rulings are reproduced in the Joint Appendix at 121-128 and 282-290, respectively.  In addition, the November 13, 2014 Memorandum Opinion is officially reported at *CostCommand, LLC v. PRS Software Solutions, Inc.*, 73 F.Supp.3d 111 (D.D.C. 2014).

(C)     <u>Related Cases</u>:

On November 13, 2014, the same day as the first of the District Court's rulings under review here was issued, Defendants, PRS Software Solutions, Inc. and Full Throttle Films Inc., d/b/a Video Equipment Rentals, commenced an action in the United States District Court for the Central District of California against CostCommand, LLC, for declaratory judgment regarding the same agreements at issue in the action before the District Court.  The California action, captioned *PRS Software Solutions, Inc., et al. v. CostCommand, LLC*, is docketed

at 2:14-CV-08817-PA-AGR (C.D. Cal.).  As noted, the parties to that action have

reached a settlement in principle.

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS
    AND RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

GLOSSARY OF ABBREVIATIONS. . . . . . . . . . . . . . . . . . . . . . . . .   xii

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . .   1

ISSUE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

STATUES AND REGULATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . .   15

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

A.    The Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

B.    The Applicable Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . .   20

C.    The Court Below Failed To Credit The Judicial Admissions
    Of Turner And WHA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

D.    The *Hertz* Court Mandated Use of the "Nerve Center" Test
    to Determine a Corporation's "Principal Place of Business"
    Under 28 U.S.C. § 1332(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . .   29

        1.    Adoption of the "Nerve Center" test requires
            examination of factors identified by previous
            decisions using that test. . . . . . . . . . . . . . . . . . . . . . . . . .   32

**2.     Application of the "Nerve Center" factors does not support the District Court's determination of WHA's principal place of business.**. . . . . . . . . . . . . . . . . . . . . . . . .     38

**E.     Under The Circumstances, The District Court's Refusal To Even Consider CostCommand's Request To Drop WHA in Order To Preserve Jurisdiction Was An Abuse Of Discretion.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     40

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     44

**STATEMENT REGARDING ORAL ARGUMENT**. . . . . . . . . . . . . . .     44

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . .     46

**CERTIFICATE OF SERVICE**

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*,
    644 F.2d 594 (7th Cir.), *cert. denied*, 454 U.S. 878 (1981).. . . . . . . .    31

*American Nat'l. Ins. Co. v. Fed. Dep. Ins. Corp.*,
    642 F.3d 1137 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988). . .    25

*Anderson v. Moorer*, 372 F.2d 747 (5th Cir. 1967). . . . . . . . . . . . . . . . . . . .    43

*Ark Initiative v. Tidwell*, 749 F.3d 1071 (D.C. Cir. 2014). . . . . . . . . . . . .    19

*Arnold v. Towers Perrin*, No. 02 Civ. 6006 (RCC),
    2003 WL 1878421 (S.D.N.Y. April 15, 2003). . . . . . . . . . . . . . . . .    22

*Beightol v. Capitol Bankers Life Ins. Co.*, 730 F.Supp. 190
    (E.D. Wis. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    34

*Bennick v. Boeing Co.*, 427 Fed.Appx. 709, 2011 WL 1988541
    (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    42

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
    713 F.2d 618 (11th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*Burdick v. Dillon*, 144 F. 737 (1st Cir. 1906), *appeal dismissed*,
    205 U.S. 550 (1907). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    33

*Byrum v. Winter*, 783 F.Supp.2d 117 (D.D.C. 2011). . . . . . . . . . . . . . . . .    20

*Authorities upon which Appellant chiefly relies are marked with an asterisk (\*).*

*Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*,
    636 F.3d 101 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . .   35, 36

*Chamberlain Manufacturing Corp. v. Maremont Corp.*,
    828 F.Supp. 589 (N.D. Ill. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . .   34

*Coalition for Underground Expansion v. Mineta*,
    333 F.3d 193 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Compucon Distributors of New England, Inc. v. Cooper*,
    685 F.Supp. 424 (S.D.N.Y. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473
    (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*De La Maza v. United States*, 215 F.2d 138 (9th Cir. 1954). . . . . . . . . .   27-28

*Derrington–Bey v. District of Columbia Dep't of Corrections*,
    39 F.3d 1224 (D.C. Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186
    (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

*DirecTV, Inc. v. Leto*, 467 F.3d 842 (3d Cir. 2006). . . . . . . . . . . . . . . . .   20

*El Paso Natural Gas Co. v. United States*, 750 F.3d 863 (D.C. Cir. 2014).   24

*Everett v. Pitt County Bd. of Educ.*, 788 F.3d 132 (4th Cir. 2015). . . . . . . .   24

*Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*,
    780 F.2d 549 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). . . . . . .   38

*Guitar Holding Co., L.P. v. El Paso Natural Gas Co.*,
    No. EP-10-CV-214-KC, 2010 WL 3338550
    (W.D. Tex. Aug. 18, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36

*Herbert v. National Academy of Sciences*, 974 F.2d 192
    (D.C. Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Heritage Education Trust v. Katz*, 287 F.Supp.2d 34 (D.D.C. 2003). . . . . 29

*\*Hertz Corp. v. Friend*, 559 U.S. 77 (2010). . . . . . . . . . . . . . . . . . . . 3, 7, 14,
    16, 29, 30,
    32, 33, 34,
    35, 36, 38,
    39, 40, 44

*Hoschar v. Appalachian Power Co.*, 739 F.3d 163 (4th Cir. 2014). . . . . . . 36

*In re Hudson River Navigation Corp.*, 59 F.2d 971 (2d Cir. 1932). . . . . . . 33

*Illinois State Trust Co. v. Terminal Railroad Assoc. of St. Louis*,
    440 F.2d 497 (7th Cir.), *cert. denied*, 404 U.S. 855 (1971).. . . . . . . . 34

*Jankovic v. International Crisis Group*, No. Civ.A. 04-01198 RBW,
    2005 WL 3276227 (D.D.C. Aug. 23, 2005). . . . . . . . . . . . . . . . . 42, 43

*Jerome Stevens Pharm., Inc. v. United States Food & Drug Admin.*,
    402 F.3d 1249 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Krauth v. Executive Telecard, Ltd.*, 887 F.Supp. 641 (S.D.N.Y. 1995). . . . 36

*Lambs Farm Internat'l, Inc. v. Northern Ins. Co.*,
    No. 02 C 6055, 2003 WL 260683 (N.D. Ill. Feb. 6, 2003). . . . . . . . 34

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    900 F.Supp.2d 8 (D.D.C. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*In re Lorazepam & Clorazepate Antitrust Litig.*, 62 F.Supp.3d 38
    (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Masterson-Cook v. Criss Bros. Iron Works, Inc.*,
    722 F.Supp. 810 (D.D.C. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*McNutt v. General Motors Acceptance Corp.*, 298 U.S.
178 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

*Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287
(3rd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     31

*Moms Against Mercury v. United States Food & Drug Admin.*,
483 F.3d 824 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . .     20

*Murphy v. Newport Waterfront Landing, Inc.*, 806 F.Supp. 322
(D.R.I. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     42

*Navarro Savings Association v. Lee*, 446 U.S. 458 (1980). . . . . . . . . . . . .     39

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). . . . . . . . . .     43

*Niedermeier v. Office of Max S. Baucus*, 153 F.Supp.2d 23
(D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

*Perry v. Blum*, 629 F.3d 1 (1st Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . .     19

*Pharmatech Solutions, Inc. v. Shasta Technologies, LLC*,
No. 14-cv-03682-BLF, 2015 WL 1802764
(N.D. Cal. April 20, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     37

*Rush v. Sport Chalet, Inc.*, 779 F.3d 973 (9th Cir. 2015). . . . . . . . . . . . . .     19

*Sabo v. Standard Oil Co. of Indiana*, 295 F.2d 893 (7th Cir. 1961). . . . .     33,
34, 40

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773
(S.D. Tex. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

*Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571 (5th Cir. 2006). . . . . .     42

*Schnitzler v. United States*, 761 F.3d 33 (D.C. Cir. 2014). . . . . . . . . . . . . .     18

-ix-

*Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862
    (S.D.N.Y. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 30, 32,
    33, 38, 40

*Smith v. Sperling*, 354 U.S. 91 (1957).. . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

*Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481
    (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603
    (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Topp v. CompAir Inc.*, 814 F.2d 830 (1st Cir. 1987). . . . . . . . . . .     30, 34-35,
    38, 40

*Trademark Properties, Inc. v. A & E Television Networks*,
    No. 2:06-cv-2195-CWH, 2008 WL 4811461
    (D.S.C. Oct. 28, 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Transportation & Storage Solutions Inc. v. KLT Industries, Inc.*,
    Civil Action No. 13-40137-TSH, 2014 WL 5320174
    (D. Mass. Oct. 17, 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

*Uniroyal, Inc. v. Heller*, 65 F.R.D. 83 (S.D.N.Y. 1974).. . . . . . . . . . . . . .   36

*Vareka Investments, N.V. v. American Inv. Properties, Inc.*,
    724 F.2d 907 (11th Cir.), *cert. denied*, 469 U.S. 826 (1984).. . . . . . .   23

*Walsh v. Hagee*, 10 F.Supp.3d 15 (D.D.C. 2013), *aff'd*, No. 14-5058,
    2014 WL 4627791 (D.C. Cir. July 11, 2014). . . . . . . . . . . . . . . . . .   23

*Wisconsin Knife Works v. National Metal Crafters*,
    781 F.2d 1280 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Wright v. Olin Corp.*, 697 F.2d 1172 (4th Cir. 1982). . . . . . . . . . . . . . . . .   27

## Statutes

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6
23, 29, 40

## Rules

Federal Rule of Civil Procedure 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Federal Rule of Civil Procedure 21. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14,
40-41, 42, 43

## Other Authorities

Friedenthal, *New Limitations on Federal Jurisdiction*, 11 STAN. L. REV.
213 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Comment, *New Federal Jurisdictional Statute*, 58 COLUMBIA L. REV.
1287 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

1 *Moore's Federal Practice*, ¶0.77[3.– 2] (1996 ed.). . . . . . . . . . . . . . . . . . 35

Note, *A Corporation's Principal Place of Business for Purposes of Diversity
Jurisdiction*, 44 MINN. L. REV. 308 (1959). . . . . . . . . . . . . . . . . . . 33

6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1555
(2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1
(3d ed. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

13F Wright, Miller & Cooper, *Federal Practice and Procedure* § 3625
(Supp. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## GLOSSARY OF ABBREVIATIONS

PRS        PRS Software Solutions, Inc.

VER        Full Throttle Films Inc. d/b/a Video Equipment Rentals

WHA        WH Administrators, Inc.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 as this is an appeal from a final order of a district court of the United States.  CostCommand's March 24, 2015 Notice of Appeal was filed within thirty days of the District Court's March 11, 2015 Memorandum Opinion and Order, which denied CostCommand's motion for reconsideration and is one of the two rulings which is the subject of the appeal.

In the action below, CostCommand alleged that the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeded $75,000.00 and there was complete diversity between the parties.  The District Court's November 13, 2014 Order held that complete diversity was lacking because the sole member of CostCommand, LLC is a citizen of Maryland, and the District Court found that the principal place of business of WH Administrators, Inc. is located in Bethesda, Maryland.  *See* November 13, 2014 Memorandum Opinion at 5-6 (Joint Appendix at 126).

By virtue of CostCommand's November 14, 2014 Motion for Reconsideration, the District Court's November 13th ruling is also at issue in this appeal.  *See generally*, *Derrington–Bey v. District of Columbia Dep't of Corrections*, 39 F.3d 1224, 1225 (D.C. Cir.1994) (motions for reconsideration

-1-

may be treated as motions to alter or amend judgment pursuant to Rule 59(e) when they are filed within 10 days of the entry of the judgment at issue).  Here, CostCommand's motion for reconsideration was timely filed the day after the District Court's November 13th Order; therefore, this Court has jurisdiction to consider both that ruling as well as the District Court's March 11, 2015 Order.

## ISSUE STATEMENT

At issue in this appeal are:

(1) whether, based on the chronology of filings while Defendants' motions to dismiss were pending, the District Court improperly faulted Plaintiff, CostCommand, LLC ("CostCommand") for not verifying, through discovery or otherwise, the "judicial admissions" of Defendants, Brendan M. Turner ("Turner") and WH Administrators, Inc. ("WHA"), admitting that WHA's "principal place of business" was in Houston, Texas;

(2) whether the Supreme Court's adoption in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), of the "nerve center" test for determining "principal place of business" pursuant to 28 U.S.C. § 1332(c)(1) – used in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y. 1959) (Weinfeld, J.) and "as applied in the Seventh Circuit," *Hertz Corp.*, 559 U.S. at 92 – necessarily includes the specific criteria identified by *Scot Typewriter* and Seventh Circuit decisions applying that same test; and

(3) whether, under the circumstances presented here, the District Court abused its discretion by refusing to consider

-3-

CostCommand's request to drop WHA as a defendant once it was

found to be the only non-diverse party, rather than dismissing the

entire action for lack of subject matter jurisdiction?


## STATUES AND REGULATIONS

**§ 1332. Diversity of citizenship; amount in controversy; costs**

&ast; &ast; &ast;

(c) For the purposes of this section and section 1441 of this title –

(1) a corporation shall be deemed to be a citizen of every State and foreign

state by which it has been incorporated and of the State or foreign state

where it has its principal place of business ....

28 U.S.C. § 1332(c)(1).

-4-

## STATEMENT OF FACTS

The action below was commenced on March 20, 2014 by the Complaint (the "Complaint") [Joint Appendix ("JA") at 8-52] of Plaintiff, CostCommand, LLC ("CostCommand").  The Complaint asserted claims arising from the alleged wrongful acts of the Defendants:  Brendan Turner ("Turner"), a supposed partner in CostCommand, and his subsequently-created competing company, WH Administrators, Inc. ("WHA"), as well as CostCommand's primary vendor, PRS Software Solutions, Inc. ("PRS"), and its alleged principal or alter ego, Full Throttle Films Inc., doing business as Video Equipment Rentals ("VER").[2]  *See generally*, Complaint, ¶¶83-87 [JA at 36-37].  As a consequence of Defendants' alleged acts, CostCommand was virtually destroyed.  Complaint, ¶88 [JA at 38].

All Defendants moved to dismiss for failure to state a claim, but only the joint motion of PRS/VER sought dismissal for lack of subject matter jurisdiction.  Specifically, PRS/VER argued, based solely on WHA's website (and contrary to the Complaint's allegations), that WHA's "corporate headquarters" was in Bethesda, Maryland.  *See* May 27, 2014 Motion to Dismiss of PRS/VER at 3

---

[2]PRS and VER subsequently filed an action for declaratory judgment against CostCommand in the Central District of California.  That action was recently settled as to all parties, and it is anticipated that PRS and VER will shortly move to withdraw from this appeal.

("According to WH Administrators' webpage, its corporate headquarters are in Maryland"); Excerpt of WHA website [JA at 55] (identifying WHA's "corporate headquarters"). Because the sole member of CostCommand, a single member limited liability company, was also a resident of Maryland, PRS/VER asserted that WHA's claimed "corporate headquarters" was synonymous with its "principal place of business" pursuant to 28 U.S.C. § 1332(c)(1), and therefore, there was no subject matter jurisdiction based upon diversity.

However, contemporaneous with their own motions to dismiss, both WHA and Turner also answered the Complaint. *See* May 27, 2014 Answer of Turner ("Turner's Answer") [JA at 57-76]; May 27, 2014 Answer of WHA ("WHA's Answer") [JA at 77-96] (collectively, the "Answers"). Both Answers admitted the Complaint's allegations that WHA's "principal place of business" was in Houston, Texas. *See* Turner's Answer, ¶7 [JA at 58]; WHA's Answer, ¶7 [JA at 78].[3] Even after the PRS/VER Motion raised the argument that WHA might not be diverse, the issue was not even mentioned in the combined Reply Brief of WHA and Turner. *See* July 14, 2014 Reply Brief of WHA and Turner. Likewise, Turner's Affidavit, submitted in support of the Reply Brief, repeats only that Bethesda is

---

[3]Indeed, the first page of WHA's May 27, 2014 Motion of Dismiss states unequivocally that "WHA's principal place of business is in Houston, Texas."

-6-

the location of "WHA's corporate headquarters."  *See* July 14, 2014 Affidavit of

Turner, ¶18.11 [JA at 103].

Several months after briefing was concluded, the District Court issued its

October 24, 2014 Order [JA at 105-107], which observed that, despite WHA's

Answer, PRS/VER "alleged" that WHA was not diverse by virtue of the statement

on its webpage.  *See* October 24, 2014 Order at 2 [JA at 106].[4]  Thus, to determine

whether it had subject matter jurisdiction, the District Court ordered WHA, by

November 7, 2014, to:

> submit a supplemental **pleading**, supported by documentary evidence
> and affidavits or declarations as necessary, addressing the
> inconsistencies surrounding the location of its principal place of
> business, including, in particular, the discrepancy between
> defendants' answer, its website, and Turner's affidavit.  WH
> Administrators should not only specify the location of its corporate
> headquarters and clarify its position on its principal place of business,
> but it must supply evidence of specific facts that would pinpoint the
> location from which the corporation's officers direct, control, and
> coordinate the corporation's activities.  *See Hertz Corp. v. Friend*,
> 559 U.S. 77, 92–93 (2010).

October 24, 2014 Order at 3 [JA at 107] (emphasis added).

On November 7, 2014, WHA filed a "Supplemental Pleading."  [JA at 108-

---

[4]A copy of WHA's website, initially submitted in support of the PRS/VER
motion to dismiss, stated WHA's "corporate headquarters" was in Bethesda,
Maryland.  *See* Exhibit A to May 27, 2014 Declaration of Michael Hussey [JA at
54-56].  Neither WHA nor Turner addressed the argument until prompted by the
District Court's October 24, 2014 Order.

120].  It stated that WHA had mistakenly admitted that its principal place of business was in Houston when it was actually in Bethesda, *id.* at 2 [JA at 109], and submitted two affidavits, from Bob Ring, WHA's Houston-based co-founder and one of its three directors, and from Turner, which both affirmed that WHA's principal place of business is in Bethesda.  *See* November 4, 2014 Affidavit of Bob Ring ("November Ring Aff.") [JA at 113-116]; November 6, 2014 Affidavit of Turner ("November Turner Aff.") [JA at 117-120].

The following Thursday, just five court days later, the District Court granted the Motion of PRS/VER and dismissed the entire action for lack of subject matter jurisdiction.  *See* November 13, 2014 Order [JA at 121] and Memorandum Opinion [JA at 122-128].[5]  Among other things, the District Court held that although CostCommand bore the burden of establishing WHA's principal place of business,

> it points only to the answer filed by WHA as evidence of the
> corporation's citizenship [which] has been disavowed and explained,
> and its evidentiary value has been outweighed by the sworn testimony
> of two of WHA's owner-directors establishing that "Mr. Turner

---

[5]Later that same day, PRS and VER commenced an action for declaratory judgment against CostCommand in the U.S. District Court for the Central District of California, case no. 2:14-cv-08817-PA-AGR, arising from the same agreements at issue in CostCommand's Complaint.  As mentioned, that action has recently settled among the parties there as to all claims between them, including those asserted here.

> directs, controls and coordinates WHA's business activities from the
> Bethesda, Maryland office."

November 13, 2014 Memorandum Opinion at 5-6 [JA at 126-127] (citation
omitted).  When considered along with WHA's website, the Court found that
CostCommand had failed to meet its burden as it could "point to no evidence –
other than the mistaken admission in the answer filed by WHA" to support a
finding of diversity.  *Id.* at 6-7 [JA at 127-128].

The next day, CostCommand moved for reconsideration of the District
Court's November 13, 2014 Order.  *See* November 14, 2014 Motion for
Reconsideration.  CostCommand principally argued that (i) WHA and Turner had
failed to satisfy the "nerve center" test adopted by *Hertz*; (ii) the "Supplemental
Pleading" was insufficient to refute the judicial admissions in Turner's Answer
and WHA's Answer; and (iii) CostCommand had been deprived of an opportunity
to either test the factual showing of Turner and WHA or to compile its own factual
record.  *See id.*[6]  In further support of its first argument, CostCommand submitted
copies of regulatory filings made by WHA in six States (including Maryland, and
one, in Florida, filed as recently as January, 2014) which all identified its primary

---

[6]The Motion for Reconsideration also argued that if, after a factual record
was compiled, WHA was still found to be non-diverse, CostCommand should be
given the chance to move to drop WHA as a party pursuant to Federal Rule of
Civil Procedure 21.  *See* November 14, 2014 Motion for Reconsideration at 11.

or principal address as Houston. *See* Exhibit A to November 14, 2014 Motion for Reconsideration.

Thereafter, over the strong objections of all Defendants, on December 3, 2014, the District Court ordered "limited jurisdictional discovery" as follows: before the end of 2014, CostCommand was permitted to depose Turner for two hours, followed by WHA's production of documents by January 9, 2015. *See* December 3, 2014 Minute Order [JA at 6]. Both the deposition and document requests would be "directly related to the location of defendant WHA's corporate 'nerve center.'" *Id.* Thereafter, parties could file a ten-page supplemental submission by January 30, 2015. *Id.*

Turner's deposition was conducted on December 19, 2014, and WHA produced documents responsive to CostCommand's document requests on January 9, 2015. All parties simultaneously submitted supplemental submissions, together with exhibits, on January 30, 2015.

Based on that limited period of discovery and the information supplied with the "Supplemental Pleading," CostCommand was able to confirm that the admissions in the Answers regarding WHA's principal place of business were likely correct, at least as of the time the Complaint was filed. Among the facts substantiated or uncovered was that WHA is a Texas corporation, formed under

the laws of that State on July 23, 2013.  *See* November Ring Affidavit, ¶1 [JA at 113]; July 23, 2013 WHA Corporate Resolutions at 1 [JA at 174].  Bob Ring, in addition to serving as WHA's Secretary and Treasurer, was also a co-founder and the source of initial funding for WHA.  *See* transcript of December 19, 2014 deposition of Brendan Turner ("Turner Dep.") at 25 [JA at 183].  Bob Ring works from the Company's Houston office.  *See* November Ring Aff., ¶¶3-4 [JA at 113].

Until some time in late 2014 (*i.e.*, well after the Complaint was filed), his son, Andy Ring – also based in Houston – was in charge of all of WHA's finances, including interactions with WHA's Texas-based accountant, as well as its regulatory filings with several States.  *See* Turner Dep. at 20, 23-24, 52 [JA at 182-183, 187].  WHA's primary bank account is maintained at the Houston branch of Capitol One, a national bank.  *See id.* at 23 [JA at 183].  During the relevant time, WHA's accounts payable and receivable were maintained from the Company's Houston location.  *See id.* at 29 [JA at 184].  Turner confirmed that finances and tax filings were all made out of the Houston location.  *See* November Turner Affidavit, ¶7 [JA at 118].

Documents produced by WHA, including corporate formation documents, such as WHA's initial resolutions, its Bylaws and the Texas Certificate of Formation, likewise identified Houston as the Company's headquarters.  *See* WHA

-11-

Corporate Resolutions at 1 [JA at 174]; WHA Bylaws, ¶¶1.1, 2.3, 7.4 [JA at 193,

204]; November Ring Aff., ¶1 and the attachment thereto [JA at 113-116].

WHA's books and records are maintained in Houston.  *See* Turner Dep. at 19 [JA

at 182].  Likewise, WHA registered with a number of States, including Alaska,

California, Florida, Louisiana, New York and Tennessee, some as recently as

November, 2014, all of which identify WHA's principal or main office as

Houston.  *See* State registrations [JA at 208-223].[7]  Customer contracts likewise

identify WHA's principal address, the address to which notices should be sent and

the place where payments should be made, as the Houston location.  *See* October

1, 2014 Agreement, ¶¶3, 17 [JA at 239, 242]; November 1, 2014 Agreement, ¶¶3,

17 [JA at 244, 249]; November 3, 2014 Agreement, ¶¶3, 17 [JA at 252, 255].

Agreements with vendors, such as its payroll provider and the company hosting its

email, also identify WHA's contact address as Houston.  *See* May 7, 2014 License

Order [JA at 258]; January 13, 2014 ADP agreement and materials [JA at 260,

---

[7]Despite its claimed "corporate headquarters," WHA has registered as a
foreign corporation with the State of Maryland, using its Houston address.  *See*
October 3, 2013 Foreign Corporation Qualification application [JA at 225-227].
Also, although CostCommand requested that WHA produce "[e]very certification,
authorization or other regulatory filing with Federal, State or local agencies,
signed under oath or the penalty of perjury, stating that WHA's principal place of
business is located at 4630 Montgomery Avenue, Bethesda, MD," WHA could
produce none.  *Compare* Plaintiff's December 10, 2014 Request for Documents,
no. 10, *with* WHA's January 9, 2015 Response, no. 10 [JA at 233, 235].

-12-

265-266]; September 1, 2014 Tradentrix invoice [JA at 268]. Turner confirmed this. Turner Dep. at 31 [JA at 185]. Even WHA's lease for its Bethesda space identifies the primary address as Houston, and the check covering the security deposit and first month's rent was drawn from a Houston-based bank. *See* July 30, 2013 Sublease Agreement [JA at 270]; July 31, 2013 check [JA at 281]. In addition, the Sublease rent is guaranteed by one of Bob Ring's companies. *See* Sublease at 11 [JA at 280]. The foregoing facts were presented to the District Court by CostCommand [JA at 173-281], which argued that they met (and exceeded) the objective factors of the "nerve center" test as adopted by *Hertz*. *See* Plaintiff's January 30, 2015 Supplemental Submission per the Court's December 3, 2014 Order.

On March 11, 2015, the District Court issued its Memorandum Opinion and Order [JA at 282-290], denying CostCommand's reconsideration motion. Among other things, the District Court held that CostCommand "did have the opportunity to address the potential lack of complete diversity in its opposition to the motion to dismiss, [but] responded to the Rule 12(b)(1) motion only by asserting that WHA's '[a]nswer admits it is a Texas corporation, with its principal place of business in Houston,' ...." *See* March 11, 2015 Memorandum Opinion and Order, at 3-4 [JA at 284-285] (citation and footnote omitted).

-13-

> Plaintiff could have submitted additional evidence and arguments relating to WHA's citizenship for the Court's consideration at that time, and it chose not to do so, despite knowing that complete diversity between the parties had been placed in issue.

*Id.* at 4 [JA at 285].  With respect to the argument regarding application of the *Hertz* decision, the District Court held that CostCommand improperly relied on "factors taken from a series of cases that preceded *Hertz* or are not binding on this Court."  March 11, 2015 Memorandum Opinion and Order, at 6 & n.3 [JA at 287] (record citation omitted).  According to the District Court, these factors "relate primarily to financial matters and do not tend to establish in any way the 'center of overall direction, control, and coordination' of WHA's operations."  *Id.* (citing *Hertz*, 559 U.S. at 96).[8]  As to CostCommand's argument regarding dropping WHA as a party pursuant to Rule 21, the District Court held it was "improper," as CostCommand "had the opportunity to address this issue by seeking leave to amend its complaint or moving to drop WHA from the case at the appropriate time

---

[8]The District Court relied, *inter alia*, on Turner's claim that he had unfettered access to funds.  *See* March 11th Memorandum Opinion and Order at 6 [JA at 287].  In reality, because WHA was initially funded by Bob Ring, it is more likely that Ring's son was placed in a position to monitor WHA's finances.  Even Turner refers to the Houston office as a "safety net," Turner Dep. at 25-26 [JA at 183-184], but this connotes control.  Indeed, nothing was paid nor any transaction entered into, not even WHA's sublease for the Bethesda location, without Bob Ring's at least tacit approval.  If the District Court considered this, it was not apparent from the March 11th Memorandum Opinion and Order.

-14-

– before the Court dismissed the case – and failed to do so." March 11, 2015

Memorandum Opinion and Order, at 8 [JA at 289]. On March 24, 2015,

CostCommand timely filed its Notice of Appeal of the District Court's November

13, 2014 and March 11, 2015 Orders. *See* March 24, 2015 Notice of Appeal [JA

at 291].

## SUMMARY OF THE ARGUMENT

While the motions to dismiss were pending, CostCommand was entitled to

rely on the admissions in both the Answers of WHA and Turner regarding WHA's

principal place of business, which supported diversity jurisdiction. In order to

cure what the District Court considered a discrepancy between the Answers and

WHA's reference to its "corporate headquarters" on its website, the District Court

directed that WHA submit a "supplemental pleading," no doubt expecting an

amended answer. However, what WHA filed was not a pleading, which did not

negate the judicial admissions upon which CostCommand justifiably relied, and

should have prompted an opportunity for CostCommand to challenge.

Instead, a few days later, the District Court, accepting WHA's

"supplemental pleading" at face value and treating it as a *de facto* amendment,

dismissed the action in its entirety for lack of subject matter jurisdiction (while

chiding CostCommand for relying on the judicial admissions). The next day,

-15-

CostCommand moved for reconsideration, pointing out, *inter alia*, that it was not only entitled to rely on the Answers while the motions to dismiss were pending, but that it never had a chance to challenge the assertions in the "supplemental pleading." Furthermore, it contended that the facts presented by WHA did not meet the "nerve center" test as adopted by *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Even if, after creation of a factual record, WHA was ultimately found to be non-diverse, CostCommand requested that it be allowed to drop WHA pursuant to Federal Rule of Civil Procedure 21.

Over Defendants' objections, the District Court permitted limited jurisdictional discovery, to be followed by supplemental briefing. As a result, CostCommand submitted evidence showing that, at the time the action was commenced, virtually all of the criteria traditionally considered as part of the "nerve center" analysis pointed to Houston as WHA's principal place of business, thereby supporting the Court's subject matter jurisdiction.

The District Court disagreed, holding that it was not bound to follow earlier decisions using the "nerve center" analysis (even those decisions specifically mentioned by *Hertz*), and therefore disregarded the evidence presented by CostCommand. The District Court also found reliance on the Answers was misplaced, and ruled that the time to challenge WHA's principal place of business

-16-

was before the motion to dismiss was granted.  Likewise, the District Court held

that the suggestion to drop WHA as a party came too late.

CostCommand contends that the foregoing shows the District Court

committed several errors.  Under the circumstances, the District Court's rulings

warrant reversal.

# ARGUMENT

## A.      The Standard of Review

      This Court ordinarily reviews *de novo* the District Court's dismissal for lack of subject matter jurisdiction.  *See*, *e.g.*, *Schnitzler v. United States*, 761 F.3d 33, 37 (D.C. Cir. 2014) (citation omitted).

      Here, the District Court's November 13th Order [JA at 121-128] was based on the Complaint, as augmented by the November 7, 2014 Supplemental Pleading of WHA and Turner.  Even though CostCommand disputed the facts in the Supplemental Pleading, it was never given that opportunity.  This sequence of events implicates *de novo* review by this Court.  *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) (where a trial court dismisses a complaint for lack of subject matter jurisdiction based solely on its allegations, "the only matters before us on appeal will be whether the District Court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed").  This *de novo* standard encompasses the District Court's decision to rule on the motion to dismiss for lack of subject matter jurisdiction without first permitting CostCommand a chance to challenge the jurisdictional claims.  *See Herbert*, 974 F.2d at 198 (noting that "ruling on a 12(b)(1) motion may be improper before the plaintiff has had a chance to discover

the facts necessary to establish jurisdiction") (citation omitted).

Thereafter, following CostCommand's reconsideration motion, and upon consideration of the parties' evidentiary submissions, *see* January 30, 2015 Responses and Supplemental Submissions [JA at 129-281], the District Court determined disputed factual issues and adhered to its earlier decision that WHA's principal place of business was in Maryland. *See* March 11, 2015 Order at 3 [JA at 282-290]. Thus, the Court reviews the District Court's March 11th Order under a "clearly erroneous" standard. *See Herbert*, 974 F.2d at 197.

In the alternative, the denial of CostCommand's motion for reconsideration is reviewed according to an "abuse of discretion" standard. *See Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) ("This court's review of the denial of reconsideration is typically limited to abuse of discretion because reconsideration 'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'") (citation omitted). This standard would also govern the District Court's decision to not even consider CostCommand's request to drop WHA as a defendant in order to preserve subject matter jurisdiction. *See*, *e.g.*, *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (citation omitted); *Perry v. Blum*, 629 F.3d 1, 16 (1st Cir. 2010) (citation

-19-

omitted); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-845 (3d Cir. 2006); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 612 (6th Cir. 2003) (citation omitted).

## B.     The Applicable Legal Standard

It is CostCommand's burden, as the party claiming subject matter jurisdiction, to demonstrate that jurisdiction exists.  *See*, *e.g.*, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Moms Against Mercury v. United States Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the District Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *American Nat'l. Ins. Co. v. Fed. Dep. Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, in light of the plaintiff's burden to establish jurisdiction, a "court must give [a] plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim."  *Byrum v. Winter*, 783 F.Supp.2d 117, 122 (D.D.C. 2011) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).

"Although 'the District Court may in appropriate cases dispose of a motion

to dismiss for lack of subject[-]matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert*, 974 F.2d at 197). Thus, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. United States Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Here, the District Court properly ordered WHA and Turner to submit additional information to determine its subject matter jurisdiction. However, CostCommand should have been given a chance to respond to that additional information before the action was dismissed.

## C.     The Court Below Failed To Credit The Judicial Admissions Of Turner And WHA.

The District Court held that CostCommand failed to meet its burden to establish jurisdiction, as it "could point to no evidence – other than the mistaken admission in the answer filed by WHA" to support a finding of diversity jurisdiction. *See* November 13, 2014 Memorandum Opinion at 6-7 [JA at 127-

-21-

128].  Despite the unqualified admissions of Turner and WHA that WHA's

"principal place of business" was located in Houston, Texas, *see* WHA Answer, ¶7

[JA at 78]; Turner's Answer, ¶7 [JA at 58] (collectively, the "Answers"), the

District Court determined, based on the subsequent affidavits of Turner and

WHA's co-founder, Bob Ring, submitted with the November 7th "Supplemental

Pleading," that WHA's principal place of business was in Bethesda, Maryland.

November 13, 2014 Memorandum Opinion at 5 [JA at 126].[9]  Thereafter, in its

subsequent decision denying the motion for reconsideration, the District Court

faulted CostCommand for failing to verify those admitted facts, even though they

were never withdrawn or amended.  *See* March 11, 2015 Memorandum Opinion

and Order at 4 [JA at 285].

    While the motions to dismiss were still pending, however, the Answers

should have been sufficient.  Instead, once the District Court dismissed its

_____

    [9]The District Court also relied on WHA's website in rendering its decision.
*See* November 13, 2014 Memorandum Opinion at 6 [JA at 127]; Exhibit to
November Turner Affidavit [JA at 119-120].  But as compared to the Answers, the
website was of limited value.  *See Arnold v. Towers Perrin*, No. 02 Civ. 6006
(RCC), 2003 WL 1878421, at *2 (S.D.N.Y. April 15, 2003) (website not
"dispositive" for determining principal place of business); *see also St. Clair v.
Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 774-775 (S.D. Tex. 1999)
(describing website as "inherently untrustworthy"); *Trademark Properties, Inc. v.
A & E Television Networks*, No. 2:06-cv-2195-CWH, 2008 WL 4811461, at *2 n.
2 (D.S.C. Oct. 28, 2008) ("The accuracy and reliability of information from the
Internet is highly questionable").

-22-

Complaint, CostCommand was forced to move for reconsideration, a "disfavored" motion in this Circuit. *See*, *e.g.*, *Walsh v. Hagee*, 10 F.Supp.3d 15, 18 (D.D.C. 2013), *aff'd*, No. 14-5058, 2014 WL 4627791 (D.C. Cir. July 11, 2014) ("Motions for reconsideration are disfavored and granting [] such a motion is [] an unusual measure") (citations and internal quotations omitted); *Niedermeier v. Office of Max S. Baucus*, 153 F.Supp.2d 23, 28 (D.D.C. 2001) ("Motions under Fed.R.Civ.P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances") (citation omitted); *see generally*, 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1 (3d ed. 2012) ("[R]econsideration of a judgement after its entry is an extraordinary remedy which should be used sparingly") (footnote omitted). Because of the District Court's November 13th ruling, CostCommand faced an uphill battle. Under the circumstances, it should not have been placed in that predicament.

The determination of a corporation's principal place of business under 28 U.S.C. § 1332(c) is a question of fact. *See*, *e.g.*, *Vareka Investments, N.V. v. American Inv. Properties, Inc.*, 724 F.2d 907, 910 (11th Cir.), *cert. denied*, 469 U.S. 826 (1984) (citation omitted). Accordingly, the Answers were "judicial admissions" on which CostCommand was entitled to rely until withdrawn or amended.

-23-

> A judicial admission is a representation made by a party that, "unless allowed by the court to be withdrawn, is conclusive in the case." *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004) (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995)). ... [J]udicial admissions "include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (internal quotation marks omitted). A purported judicial admission is binding only if the statement is "deliberate, clear, and unambiguous." *Id.*

*Everett v. Pitt County Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015); *see also*

*El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014)

("[F]actual allegations in operative pleadings are judicial admissions of fact")

(citations omitted); *Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d

481, 483 (7th Cir. 1997) ("[A]lthough the rule smacks of legalism, judicial

efficiency demands that a party not be allowed to controvert what it has already

unequivocally told a court by the most formal and considered means possible");

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618,

621 (11th Cir. 1983) ("[J]udicial admissions are proof possessing the highest

possible probative value [and constitute] facts established not only beyond the

need of evidence to prove them, but beyond the power of evidence to controvert

them") (citations and internal quotations omitted).

Judicial admissions are not limited to allegations in a complaint. "A

-24-

statement in a complaint, answer or pretrial order is a judicial admission, as is a

failure in an answer to deny an allegation." *American Title Ins. Co. v. Lacelaw*

*Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citations omitted); *see Crawford v.*

*Franklin Credit Management Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) ("Facts

admitted in an answer, as in any pleading, are judicial admissions that bind the

defendant throughout the litigation") (citation and internal alteration omitted).

Accordingly, once WHA and Turner admitted CostCommand's allegations

and confirmed that WHA's "principal place of business" was in Houston – while

Defendants' motions to dismiss were pending – CostCommand was under no

obligation to independently verify WHA's "principal place of business." Rather, it

was permitted to rely on the binding admissions of WHA and Turner.[10]

---

[10]It was not only the admissions themselves, but also their context which
made CostCommand's reliance justifiable. For example, in Turner's Answer, he
not only admitted that the District Court had diversity jurisdiction, he twice
admitted that WHA's offices are in Houston, Texas. *See* Turner's Answer, ¶¶1, 7,
82 [JA at 57, 58, 68-69]. Likewise, WHA twice admitted that its offices are in
Houston, *see* WHA's Answer, ¶¶7, 82 [JA at 78, 89], and its denial of the
allegation asserting diversity jurisdiction is based only on the reach of the District
of Columbia's long-arm statute. *See id.*, ¶1 [JA at 77]. Moreover, while the
Answers equivocate or qualify, *see, e.g.*, Turner's Answer, ¶82 [JA at 68-69],
WHA's Answer, ¶82 [JA at 89], both contain unadorned admissions regarding the
"principal place of business" of WHA. *See id.*, ¶7 [JA at 58, 78]. While
subsequently claimed as "mistakes," these admissions were repeated multiple
times. Indeed, the first page of WHA's May 27, 2014 Motion to Dismiss states
unequivocally that "WHA's principal place of business is in Houston, Texas."
Consequently, in response to the PRS/VER challenge of the District Court's

Nonetheless, in its denial of the reconsideration motion, the District Court held that, while the motions to dismiss were pending, CostCommand "could have submitted additional evidence and arguments relating to WHA's citizenship for the Court's consideration at that time ...."  March 11, 2015 Memorandum Opinion and Order, at 4 [JA at 285] (asserting that CostCommand knew "that complete diversity between the parties had been placed in issue").  But this presumes that the location of WHA's "principal place of business" was actually "placed in issue."  *Id.*  At the time, in light of the Answers, it was not.

Furthermore, despite the District Court's *sua sponte* direction that WHA and Turner submit a "supplemental pleading," *see* October 24, 2014 Order [JA at 107], the November 7, 2014 filing [JA at 108-120] was not a "pleading."  Federal Rule of Civil Procedure 7(a) defines pleadings, and the title of the November 7th filing of WHA and Turner is a misnomer, as it was more akin to a memorandum of law or a brief.  Absent withdrawal or an actual amendment, the Answers – as judicial admissions – prevail as the last binding statement on the issue.[11]  In any

---

subject matter jurisdiction, CostCommand had ample reason to rely on the admissions of WHA and Turner regarding WHA's "principal place of business."

[11]The District Court undoubtedly understood this, which is why it requested that WHA submit a "supplemental pleading."  *See* October 24, 2014 Order [JA at 107].  In its March 11th Memorandum Opinion and Order, the District Court acknowledges a situation where "a party makes an admission that it ***later***

event, CostCommand was given no time to even respond before the District Court issued its November 13, 2014 Order dismissing the action.

The District Court buttressed its decision denying reconsideration by asserting that the Answers were "not binding on this Court[] because 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *See* March 11, 2015 Memorandum Opinion and Order at 4, n.2 [JA at 285] (citations omitted). However, this "overlooks the distinction between an admission that federal subject matter jurisdiction exists, and an admission of facts serving in part to establish federal subject matter jurisdiction." *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986). In the latter situation, "the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." *Id.* (quoting *Railway Co. v. Ramsey*, 89 U.S. 322, 327 (1874); *United States v. Anderson*, 503 F.2d 420, 422 (6th Cir. 1974)); *see, e.g.*, *Wright v. Olin Corp.*, 697 F.2d 1172, 1177 n.2 (4th Cir. 1982) (finding that "properly drafted stipulations" of jurisdictional facts could serve to establish federal subject matter over a case); *De*

_____

*withdraws in a subsequent pleading* and thereafter contests ...." *Id.* at 4 n.2 [JA at 285] (quoting *A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F.Supp.2d 168, 183 (D.D.C. 2011)) (emphasis added). However, the November 7th filing of WHA and Turner is neither an amended answer, a withdrawal nor a "subsequent pleading," so the scenario presented in the *A-J Marine* decision did not happen here.

-27-

*La Maza v. United States*, 215 F.2d 138, 140 (9th Cir. 1954) ("[I]t is well settled that one may stipulate to facts from which jurisdiction may be inferred") (citations omitted).  Here, the Answers admitted facts, including WHA's principal place of business, based upon which the District Court could have properly exercised subject matter jurisdiction.

CostCommand does not suggest that the Answers of WHA and Turner should be allowed to stand inviolate and confer federal jurisdiction where it is otherwise unwarranted.  However, the more appropriate response, given the obvious conflict between the Answers, as judicial admissions, and the affidavits later submitted in connection with the Supplemental Pleading, should have been to hold the decision on the motion to dismiss in abeyance until jurisdictional discovery was completed and the parties submitted additional briefing. Alternatively, WHA and Turner should have been directed to either withdraw or amend their Answers.  Instead, the District Court did neither, forcing CostCommand to attempt to overcome the heightened burden of a motion for reconsideration and then, in denying that motion, faulting CostCommand for relying on the judicial admissions.  Under the circumstances, this was reversible error.

**D.** **The *Hertz* Court Mandated Use of the "Nerve Center" Test to Determine a Corporation's "Principal Place of Business" Under 28 U.S.C. § 1332(c)(1).**

For purposes of diversity jurisdiction, a corporation is deemed a citizen of both its State of incorporation and the State "where it has its principal place of business ...." 28 U.S.C. § 1332(c)(1). However, as recounted by the unanimous *Hertz* Court, application of the phrase "principal place of business" was more difficult than Congress anticipated when the diversity statute was amended in 1958. *See id.*, 559 U.S. 77, 88-89 (2010). Consequently, by the time *Hertz* was decided, there were at least three tests, often overlapping, to determine the location of a corporation's "principal place of business." *See id.*, 559 U.S. at 91 (naming "nerve center," "locus of operations" and "center of corporate activities" analyses).[12]

Prompted by interests of uniformity and "judicial administration of a jurisdictional statute [that is] as simple as possible," *Hertz*, 559 U.S. at 81, 94 ("[A]dministrative simplicity is a major virtue in a jurisdictional statute") (citation

_____

[12]Prior to *Hertz*, courts in this Circuit had used a variation of these tests. *See Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F.Supp. 810, 812 (D.D.C. 1989) (location of company's headquarters becomes important only if "no one state is clearly the center of corporate activity or accounts for a majority of the company income"); *cf.*, *Heritage Education Trust v. Katz*, 287 F.Supp.2d 34, 36 (D.D.C. 2003).

-29-

omitted), the Court adopted the "nerve center" test, initially used in *Scot*

*Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y. 1959), and "as

applied in the Seventh Circuit."  *Hertz*, 559 U.S. at 92 (citing *Scot Typewriter* and

*Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.

1986)).  Thus, the Court effectively created a presumption that a corporation's

"nerve center" is ordinarily its headquarters, from which its "officers direct,

control, and coordinate the corporation's activities."  *Id.*, 559 U.S. at 92-93.  But

while *Hertz* set the parameters of what was unacceptable, *see id.* at 93, 97

(principal place of business cannot be "simply an office where the corporation

holds its board meetings" or "nothing more than a mail drop, a bare office with a

computer, or the location of an annual executive retreat ...."), it did not specifically

identify the criteria to be used "to determine which of these different business

locales [such as manufacturing plants or sales locations] is the 'principal' or most

important 'place.'"  *Id.* at 95.

     In its November 14, 2014 reconsideration motion, in response to the

equivocal "Supplemental Pleading" of WHA and Turner, CostCommand

suggested that the factors or criteria used by earlier courts applying the "nerve

center" test, such as *Scot Typewriter*, *Topp v. CompAir Inc.*, 814 F.2d 830, 834 (1st

Cir. 1987) – specifically mentioned by *Hertz*, 559 U.S. at 90 – or several decisions

from the United States Court of Appeals for the Seventh Circuit, should be used.[13]

The District Court, referring to these factors as "taken from a series of cases that preceded *Hertz* or are not binding on this Court," *see* March 11, 2015

Memorandum Opinion and Order at 6 [JA at 287], rejected that suggestion. *See*

*id.* ("The factors identified by plaintiff in its motion and its jurisdictional response

– where WHA's federal and state tax returns are filed, the location of its corporate

bank account, the address on certain regulatory filings and contracts, and where

---

[13]The "Supplemental Pleading" raised more questions than it answered.  On the one hand, it confirmed that several of the "nerve center" factors pointed to Houston.  *See* November Turner Affidavit, ¶7 [JA at 118] (WHA's "finances (accounts payable, accounts receivable, deposits, balancing of accounts, payroll and withholding) are handled out of [WHA's] Houston office").  Bob Ring, one of three directors of WHA and its incorporator, confirmed that WHA's primary legal counsel is based in Houston, Texas.  *See* November Ring Affidavit, ¶6 [JA at 114]. However, Turner's statement that he runs WHA's operations from the Bethesda location, which is also where a majority of its employees and its call center are located, *see* Turner Aff., ¶4 [JA at 117], sounds more like the now-discredited "center of operations" test.  *See, e.g.*, *Compucon Distributors of New England, Inc. v. Cooper*, 685 F.Supp. 424, 425 (S.D.N.Y. 1988) ("'place of operations' test ... fixes a corporation's principal place of business at the location where its actual physical activities are conducted, rather than where overall executive direction takes place") (citation omitted); *Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287, 291 (3rd Cir. 1998) (the "center of corporate activities" test "requires courts to ascertain 'the headquarters of day-to-day corporate activity and management'") (citations omitted); *cf., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 620 (7th Cir.), *cert. denied*, 454 U.S. 878 (1981) ("The mere fact that American [Airlines]'s operations base was located in Texas on the date of the crash does not suggest that the operations center was the true 'nerve center' of American's activities").

-31-

credit card orders and collection matters are handled – relate primarily to financial matters and do not tend to establish in any way the 'center of overall direction, control, and coordination' of WHA's operations") (citing *Hertz*, 559 U.S. at 96). To the contrary, these factors are precisely those used by courts applying the "nerve center" test, and thus were adopted by the *Hertz* Court.

CostCommand contends the District Court's refusal to apply the "nerve center" factors was erroneous. In reaching its decision, *Hertz* endorsed the fifty year old decision in *Scot Typewriter* as the "analysis" to be conducted to find a "principal place of business," *Hertz*, 559 U.S. at 90, and necessarily adopted the factors considered significant by courts applying the "nerve center" test. *See* 13F Wright, Miller & Cooper, *Federal Practice and Procedure* § 3625 (Supp. 2015) (noting that after *Hertz*, "the factors and processes by which the courts are to apply the 'nerve center' test remain unchanged").

1.    **Adoption of the "Nerve Center" test requires examination of factors identified by previous decisions using that test.**

*Scot Typewriter* identified a number of indicia of "nerve center" status, such as the location of executive offices and senior management, where decisions regarding advertising, personnel, and sales are made, and where corporate federal and state income tax returns are filed. *See id.*, 170 F.Supp. at 864-865. The

-32-

Seventh Circuit Court of Appeals, relying on *Scot Typewriter*, developed a similar set of objective criteria for fixing a corporation's "nerve center." *See Sabo v. Standard Oil Co. of Indiana*, 295 F.2d 893, 894-895 (7th Cir. 1961) (finding that the defendant's principal place of business was the location (i) of its general offices; (ii) where officers and department heads resided and the office from which they worked; (iii) where corporate income tax returns were filed; (iv) where corporate records and audits were kept; (v) where credit card transactions and collection matters were handled; (vi) where the principal bank account was maintained; and (vii) where Board of Directors' meetings were held).[14]

---

[14]Neither *Scot Typewriter* nor *Sabo* wrote on a clean slate. The *Sabo* decision, 295 F.2d at 894, relied on *Scot*, which in turn relied on *In re Hudson River Navigation Corp.*, 59 F.2d 971, 973-974 (2d Cir. 1932), and all three decisions endorsed *Burdick v. Dillon*, 144 F. 737 (1st Cir. 1906), *appeal dismissed*, 205 U.S. 550 (1907). *Burdick* applied the "supreme control" or "home office" test to determine "principal place of business" under the then-current version of the Bankruptcy Act. *See id.*, 144 F. at 737-738 (finding "principal place of business" based on where "the directors met, the books of account were kept, the general correspondence was conducted, the great bulk of sales was negotiated, the bills were sent out, and payments received [and where] [t]he principal banking was done"). Section 1332(c)(1)'s use of "principal place of business" is derived from this Bankruptcy Act language, and the *Burdick* court's analysis was well-known at the time. *See* Comment, *New Federal Jurisdictional Statute*, 58 COLUMBIA L. REV. 1287, 1296 n.64 (1958); Note, *A Corporation's Principal Place of Business for Purposes of Diversity Jurisdiction*, 44 MINN. L. REV. 308, 316-317 (1959); Friedenthal, *New Limitations on Federal Jurisdiction*, 11 STAN. L. REV. 213, 223-224 & n. 56 (1959). The "nerve center" criteria adopted by *Hertz* is derived from the same decisions. *See Hertz*, 559 U.S. at 89 (citing *Burdick*).

-33-

Since *Sabo*, the Seventh Circuit has continued to focus on a relatively

consistent set of objective factors for determining "principal place of business."

These include the following:

–      where general offices are located;
–      where corporate officers reside;
–      where management decisions are made;
–      where income tax returns are filed;
–      where corporate books and records are maintained;
–      where the principal bank account is located;
–      where orders are received and filled, and payment is handled; and
–      where board of directors' meetings are held.

*See*, *e.g.*, *Illinois State Trust Co. v. Terminal Railroad Assoc. of St. Louis*, 440

F.2d 497, 499-500 (7th Cir.), *cert. denied*, 404 U.S. 855 (1971); *Beightol v. Capitol*

*Bankers Life Ins. Co.*, 730 F.Supp. 190, 192-193 (E.D. Wis. 1990); *Chamberlain*

*Manufacturing Corp. v. Maremont Corp.*, 828 F.Supp. 589, 592 (N.D. Ill. 1993);

*see also Lambs Farm Internat'l, Inc. v. Northern Ins. Co.*, No. 02 C 6055, 2003

WL 260683, at *2 (N.D. Ill. Feb. 6, 2003) (if a "corporation's headquarters is not

easily ascertained," courts look to "(1) where important decisions are made; (2)

where the corporation's general counsel, directors, officers and shareholders are

located; (3) where the corporation is funded; and (4) where the corporation's

primary bank account exists") (citations omitted).[15]  As formulated by the Seventh

_____

[15]The First Circuit's decision in *Topp*, also singled out in *Hertz*, *see id.*, 559
U.S. at 90, identified a similar set of factors to determine "principal place of

Circuit, the "nerve center" test eschews "consideration of such things as where the assets or employees of the corporation are concentrated." *See Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1191 (7th Cir. 1986); *cf.*, *Hertz*, 559 U.S. at 96 (under the "nerve center" approach, "[c]ourts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other").

In one of the first appellate decisions to apply *Hertz*, the Court of Appeals for the Fourth Circuit ruled that even though a company's "day-to-day operations" were conducted in West Virginia, its "nerve center" was in Dearborn, Michigan because most of its senior officers, who made strategic policy decisions, were located there. *See Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 105 (4th Cir. 2011). The *Central West* decision also stressed the company's regulatory filings with three States, which listed Dearborn as its principal place of business. *See id.*, 636 F.3d at 105. Even though *Hertz*

_____

business:" (i) location of corporate headquarters; (ii) location of directors' meetings; (iii) location from where corporate income tax return is filed; (iv) location of corporate records; (v) location of principal bank accounts; (vi) location of corporate personnel who direct the daily operations of the corporation; (vii) place where major policy decisions are made; and (viii) place which is designated in the charter or other corporate documents as the official headquarters of the company. *See Topp*, 814 F.2d at 837-838 (citation omitted); *see generally*, 1 *Moore's Federal Practice*, ¶0.77[3.– 2], at 800.106-800.107 (1996 ed.).

held that similar filings, standing alone, were insufficient to prove the location of a corporate "nerve center," *see id.*, 559 U.S. at 97, such representations should not be discounted where they are consistent with other indicia of "nerve center."  *See Central West*, 636 F.3d at 105.[16]  In *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 173 (4th Cir. 2014), the Fourth Circuit revisited the issue and held that even though the company's website referred to its headquarters in Charleston, West Virginia, that did not negate the presence of the majority of the Company's officers and its Board of Directors in Columbus, Ohio, where "significant corporate decisions," including governmental filings and the payment of taxes, occurred.  *See id.* at 172.

Other decisions post-*Hertz* likewise look at similar objective criteria to determine "principal place of business" or "nerve center."  *See*, *e.g.*, *Guitar Holding Co., L.P. v. El Paso Natural Gas Co.*, No. EP-10-CV-214-KC, 2010 WL 3338550, at *3 (W.D. Tex. Aug. 18, 2010) (identifying, *inter alia*, the location "of corporate and executive offices," "where corporate records and bank accounts are

---

[16]*Hertz*'s caution against sole reliance on regulatory filings is not new. Under the "nerve center" analysis, such filings – standing alone – were also not determinative.  *See*, *e.g.*, *Krauth v. Executive Telecard, Ltd.*, 887 F.Supp. 641, 647-648 (S.D.N.Y. 1995); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86-87 (S.D.N.Y. 1974).  Here, WHA's numerous state regulatory filings designating Houston as its principal office [JA at 208-229] do not "stand alone," but are consistent with other "nerve center" indicia.

kept," "where corporate income tax is filed," and the location "designated in the corporate charter") (citations omitted); *In re Lorazepam & Clorazepate Antitrust Litig.*, 62 F.Supp.3d 38, 44-45 (D.D.C. 2014) (company's principal place of business was where "day to day managerial functions; creation and approval of corporate policies; budgeting, accounting and related financial functions and decisions; strategic planning; human resources, including key employment decisions and payroll; marketing and sales, and banking" occurred); *Transportation & Storage Solutions Inc. v. KLT Industries, Inc.*, Civil Action No. 13-40137-TSH, 2014 WL 5320174, at *4 (D. Mass. Oct. 17, 2014) (finding that location from which corporation "1) directed, controlled, and coordinated corporate activities; 2) maintained business records; and 3) processed all financial transactions" was its principal place of business); *Pharmatech Solutions, Inc. v. Shasta Technologies, LLC*, No. 14-cv-03682-BLF, 2015 WL 1802764, at *4 (N.D. Cal. April 20, 2015) (rejecting corporation's attempt to limit its "nerve center" to manufacturing location, which ignored "where PharmaTech makes decisions regarding marketing, sales, customer relations, strategic planning, financial control and review, or other aspects of PharmaTech's operations").

Based on the foregoing, the District Court erred by rejecting the well-recognized factors used under the "nerve center" test as "not binding on this

-37-

Court." *See* March 11, 2015 Memorandum Opinion and Order at 6 [JA at 287]. Rather, these are precisely the criteria that the *Hertz* Court, by endorsing *Scot Typewriter*, *Topp* and the jurisprudence from the Seventh Circuit, directed that courts should now apply to determine "principal place of business."

2.    **Application of the "Nerve Center" factors does not support the District Court's determination of WHA's principal place of business.**

By rejecting application of the traditional "nerve center" factors, the District Court discounted or did not consider documents and testimony which signified Houston, Texas, rather than Bethesda, as WHA's principal place of business.  In its January 30, 2015 Supplemental Submission [JA at 173-281], CostCommand identified documents relating to, *inter alia*, WHA's corporate formation, State regulatory filings, customer contracts and vendor contracts which all signified Houston as WHA's principal place of business.  Therefore, when the objective criteria endorsed by *Hertz* for establishing "nerve center" are applied to WHA, its principal place of business is Houston.

Moreover, CostCommand's action was commenced on March 20, 2014. Although not mentioned by the District Court, that is the time frame in which to evaluate the location of WHA's principal place of business.  *See*, *e.g.*, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (whether subject

-38-

matter jurisdiction exists "depends upon the state of things at the time of the action brought") (citation omitted); *Navarro Savings Association v. Lee*, 446 U.S. 458, 459 n.1 (1980) ("Jurisdiction turns on the facts existing at the time the suit commenced") (citation omitted); *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) ("[J]urisdiction is tested by the facts as they existed when the action is brought"). Many of the documents and agreements identified by CostCommand are far closer in time to when CostCommand initiated the action in March, 2014.  Because the District Court appears to refer to WHA's operations in Bethesda in the present tense, *see*, *e.g.*, March 11, 2015 Memorandum Opinion and Order, at 5 [JA at 286], it may have overlooked this important distinction.

The *Hertz* Court acknowledged that the "nerve center" analysis is "imperfect" and may not "automatically generate a result."  *Id.* at 93, 96. Nevertheless, the Court concluded that the benefits of a "clearer rule" outweighed any "seeming anomalies" or "occasionally counterintuitive results ...."  *Id.* at 96. Here, consideration of the indicia traditionally used in the "nerve center" analysis is the "clearer rule" and it points to Houston as WHA's "principal place of business."  Houston is where WHA told State authorities, customers, vendors and its landlord it could be found, it was where in-person, strategic meetings were conducted, it was where tax filings were made, where its corporate records are

-39-

kept, where its primary counsel, accountants and bank account are located, and the place specified as its headquarters in its corporate charter. *Cf.*, *Scot Typewriter*, 170 F.Supp. at 864-865; *Sabo*, 295 F.2d at 894-895; *Topp*, 814 F.2d at 837-838. These objective factors all point to Houston. Accordingly, that is WHA's "principal place of business" for purposes of 28 U.S.C. § 1332(c)(1). By failing to apply the factors adopted by *Hertz*, the District Court reached the incorrect determination.

**E.    Under The Circumstances, The District Court's Refusal To Even Consider CostCommand's Request To Drop WHA in Order To Preserve Jurisdiction Was An Abuse Of Discretion.**

In its motion for reconsideration, filed the day after the District Court's November 13, 2014 Order dismissing the action, CostCommand first raised the prospect that if WHA were found to be a "jurisdictional spoiler," *see In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F.Supp.2d 8, 12 (D.D.C. 2012), then CostCommand should be given the chance to drop WHA pursuant to Federal Rule of Civil Procedure 21. This argument was repeated in CostCommand's January 30, 2015 Supplemental Submission.

The District Court held that even consideration of the argument was "improper at this stage." March 11, 2015 Memorandum Opinion and Order, at 8 [JA at 289]. According to the District Court, CostCommand

-40-

> had the opportunity to address this issue by seeking leave to amend
> its complaint or moving to drop WHA from the case at the
> appropriate time – before the Court dismissed the case – and it failed
> to do so.

*Id.* However, for the same reasons CostCommand could not have anticipated the

need to verify WHA's admission that its principal place of business was in Texas

(and thus supporting diversity jurisdiction), CostCommand could not foresee the

need to drop WHA as a party until the Court held that, notwithstanding the judicial

admission, WHA was not diverse. Moreover, there was no "appropriate time" to

move to drop WHA as a party, at least not between the November 7th

Supplemental Pleading and the District Court's November 13th Order dismissing

the action.

Despite this, the District Court held that "[b]ecause this case has already

been dismissed by the Court, and because plaintiff's belated suggestion that the

Court consider dropping WHA as a party was simply included as an aside in

plaintiff's motion for reconsideration, the Court declines to exercise its discretion

here [and drop WHA as a party]." *Id.*, at 9 [JA at 290]. As recounted above,

CostCommand's suggestion was "belated" only because WHA's presence in the

action had not been an issue until **after** the Court dismissed the action.

By its terms, Federal Rule of Civil Procedure 21 permits any party or the

-41-

Court, *sua sponte*, "at any time" to "drop or add a party."  Fed. R. Civ. Proc. 21.

While this Rule may not be used to add a party in order to create diversity that was

not present at the time an action was commenced, *see*, *e.g.*, *Salazar v. Allstate*

*Texas Lloyd's, Inc.*, 455 F.3d 571, 573 (5th Cir. 2006), "[i]t is widely accepted that

Rule 21 permits district courts to dismiss a nondiverse party to cure a

jurisdictional defect so long as the nondiverse party is not indispensable to the

action."  *Jankovic v. International Crisis Group*, No. Civ.A. 04-01198 RBW, 2005

WL 3276227, at *6 (D.D.C. Aug. 23, 2005) (citations and footnote omitted); *see*,

*e.g.*, *Bennick v. Boeing Co.*, 427 Fed.Appx. 709, 712-713, 2011 WL 1988541, at

*3 (11th Cir. 2011) (affirming dropping of party per Rule 21 because, "had the

district court not dropped [the defendant], it would have been obligated to dismiss

the entire action for lack of subject matter jurisdiction ...."); *Murphy v. Newport*

*Waterfront Landing, Inc.*, 806 F.Supp. 322, 325 (D.R.I. 1992) ("Even though the

Court does not have subject matter jurisdiction over the case as instituted, it does

not have to dismiss the entire case automatically [but r]ather, unless the Court

finds that the dismissed party is 'indispensable,' ... it may dismiss any non-diverse

party pursuant to Rule 21 and proceed with the case") (citations and footnotes

omitted).  Even if a party is found indispensable, an alternative to dismissal is to

"provide the plaintiff the opportunity to file an amended complaint."  *Jankovic*,

-42-

2005 WL 3276227, at *6 (citations omitted). In either case, the objective is to avoid "needless waste [which] runs counter to effective judicial administration." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989) (citation and internal quotations omitted).[17] Furthermore, although the District Court is afforded wide discretion under Rule 21, it is not unfettered. *See*, *e.g.*, *Anderson v. Moorer*, 372 F.2d 747, 750 n. 4 (5th Cir. 1967) (district court abused its discretion by refusing "to allow a party to be dropped (when joinder of that party destroys diversity) and bases the refusal upon [a] legal misconception ....") (citations omitted).

Here, CostCommand was never given a chance to respond or challenge the assertions in the November 7th Supplemental Pleading before the entire action was dismissed. In its reconsideration motion filed the day after the November 13th dismissal, CostCommand offered an efficient resolution - drop WHA as a defendant once the parties were given an opportunity to show it was indispensable.

---

[17]In the context of Rule 17, dealing with real parties in interest, a respected treatise observes that "the choice of a party at the pleading stage ought not have to be made at the risk of a final dismissal of the action should it later appear that there had been an error." 6A Wright, Miller & Kane, *Federal Practice & Procedure* § 1555 (2010). The same observation could be made here – once it was learned that the District Court determined WHA to be non-diverse, the better alternative would have been to at least consider CostCommand's request to drop WHA.

The District Court's refusal to even consider that option constitutes an abuse of discretion.

## CONCLUSION

For the foregoing reasons, Appellant, CostCommand, LLC, respectfully submits the District Court's November 13, 2014 Order and its March 11, 2015 Memorandum Opinion and Order should be reversed, and this action remanded.

## STATEMENT REGARDING ORAL ARGUMENT

CostCommand believes that a discussion of the effect of the judicial admissions in the context of this case would be beneficial, as would a discussion of whether the Supreme Court's adoption of the "nerve center" test in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), includes the factors identified by earlier decisions employing the same test.  For these reasons, CostCommand respectfully requests oral argument.

Respectfully submitted,

*/s/ Patrick A. Klingman*
Patrick A. Klingman
KLINGMAN LAW, LLC
196 Trumbull Street  Suite 510
Hartford, CT  06103-2207
(860) 256-6120
pak@klingmanlaw.com

-44-

Christopher "Kip" Schwartz
SCHWARTZ & ASSOCIATES PLLC
1010 Wisconsin Avenue NW, Suite 540
Washington, DC  20007
(202) 342-0413
(202) 330-5272 (facsimile)
kip.schwartz@schwartzassociates-law.com

*Counsel for Plaintiff-Appellant,*
*CostCommand, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), the foregoing

Opening Brief of Appellant, CostCommand, LLC, complies with the type-volume

limitation because:

> based on the word count function of WordPerfect Office X5, the word-processing program used to draft this brief, it contains 10016 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The foregoing Opening Brief also complies with the typeface requirements

of Federal Rules of Appellate Procedure 32(a)(5)(A) and (6) because it has been

drafted in proportional spaced typeface, 14 point Times New Roman.

*/s/ Patrick A. Klingman*
Patrick A. Klingman

-46-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2015, I caused a true and correct copy of the foregoing, together with the Joint Appendix, to be filed via the Court's CM/ECF System and served via U.S. mail on the following:

David Anthony Hill, Esq.
Thomas A. Duckenfield, III, Esq.
Wong Fleming, P.C.
613 2nd Street, N.E.
Washington, DC  20002

John D. Taliaferro, Esq.
Kaye Scholer LLP
901 15th Street, N.W.
Washington, DC  20005

Moxila A. Upadhyaya, Esq.
Venable LLP
575 7th Street, NW
Washington, DC  20004

*/s/ Patrick A. Klingman*
Patrick A. Klingman